UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAMAR R.,

                          Plaintiff,
         v.

KILOLO KIJAKAZI,[1] Commissioner of
  Social Security,

                         Defendant.
_____

**DECISION
and
ORDER**

**21-CV-6106F**

(**consent**)

APPEARANCES:         LAW OFFICES OF KENNETH R. HILLER, PLLC
                            Attorneys for Plaintiff
                            KENNETH R. HILLER, and
                            ANTHONY JOHN ROONEY, of Counsel
                            6000 North Bailey Avenue, Suite 1A
                            Amherst, New York  14226

                            TRINI E. ROSS, JR.
                            UNITED STATES ATTORNEY
                            Attorney for Defendant
                            Federal Centre
                            138 Delaware Avenue
                            Buffalo, New York  14202
                                    and
                            KATHRYN L. SMITH
                            Assistant United States Attorney
                            United States Attorney's Office
                            100 State Street
                            Rochester, New York  14614
                                    and
                            ANDREEA LAURA LECHLEITNER
                            Special Assistant United States Attorney, of Counsel
                            Social Security Administration
                            Office of General Counsel
                            6401 Security Boulevard
                            Baltimore, Maryland  21235

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On October 3, 2022, this matter was reassigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. 10). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on December 3, 2021 (Dkt. 7), and by Defendant on December 8, 2021 (Dkt. 8).

## BACKGROUND

Plaintiff Shamar R. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on February 8, 2018, for Social Security Supplemental Income ("SSI") under Title XVI of the Act ("disability benefits"). Plaintiff alleges he became disabled on October 20, 2017, based on irritable bowel syndrome ("IBS"), and Crohn's disease. AR[2] at 15, 146, 163. Plaintiff's application initially was denied on May 7, 2018, AR at 87-92, and at Plaintiff's timely request, AR at 95-109, on December 27, 2019, a video hearing was held before administrative law judge ("ALJ") Andrew J. Soltes, Jr. ("the ALJ) located in Albany, New York. AR at 28-73. Appearing and testifying at the hearing in Rochester, New York, were Plaintiff, represented by Jeffrey Valentine, Esq., and vocational expert ("VE") Cherie Plante ("the VE").

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on July 8, 2021 (Dkt. 5).

2

On May 12, 2020, the ALJ issued a decision denying Plaintiff's claim, AR at 12-27 ("the ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council. AR at 143-45. On December 10, 2020, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's final decision. AR at 1-6. On February 3, 2021, Plaintiff commenced the instant action seeking judicial review of the ALJ's Decision.

On December 3, 2021, Plaintiff moved for judgment on the pleadings (Dkt. 7) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 7-1) ("Plaintiff's Memorandum"). On December 8, 2021, Defendant moved for judgment on the pleadings (Dkt. 8) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of Her Motion for Judgement on the Pleadings and in Response to Plaintiff's Brief (Dkt. 8-1) ("Defendant's Memorandum"). Filed on January 19, 2022, was Plaintiff's Reply to Commissioner's Memorandum in Support (Dkt. 9) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED; the matter is remanded for further development of the record.

## **FACTS**[3]

Plaintiff Shamar R. ("Plaintiff" or "Shamar")), born January 13, 1991, was 26 years old as of October 20, 2017, his alleged disability onset date ("DOD"), and 29 years old as of May 12, 2020, the date of the ALJ's Decision. AR at 15, 21, 146, 163.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

3

Plaintiff lives in an apartment with his three-year old daughter and his daughter's mother.  AR at 43-44, 49, 250.

As a preschooler, Plaintiff was identified as learning disabled and placed in a special education program where he received occupational therapy and speech/language therapy.  AR at 666.  Plaintiff repeated first grade, and by the seventh grade, Plaintiff's academics ranged from two to five grade levels behind.  AR at 176-79, 666.  On October 24 and 26, 2006, Plaintiff underwent a state-mandated triennial school psychological re-evaluation ("2006 cognitive evaluation") of Plaintiff's placement and classification of special education services.  AR at 666.  One component of the 2006 cognitive evaluation was intelligence quotient ("IQ") testing that showed Plaintiff with a full-scale IQ of 70, placing Plaintiff in the "well below average range and 2nd percentile when compared to a nationwide sample of students his age."  AR at 669.  Because Plaintiff "was highly motivated throughout the assessment," Plaintiff's performance on the IQ testing was considered "a valid representation of Shamar's true intellectual functioning."  *Id*. at 669.  Plaintiff attended school until 9th grade, leaving school in 2006 when he was incarcerated, first in juvenile detention center for 5 ½ years, followed by 2 ½ years in an adult correctional facility.  AR at 48, 292, 666.  While incarcerated in the juvenile detention center, Plaintiff continued to attend school but never advanced beyond the 9th grade, AR at 48, nor has Plaintiff received a graduate equivalent diploma or any vocational training.  AR at 726.

Plaintiff does not have a driver's license and does not drive, but depends on rides from his mother or step-father or uses public transportation.  AR at 46-47, 250.  Plaintiff has no past relevant work ("PRW").  AR at 21.

At a medical review on September 2, 2012 at Wyoming Correctional Facility ("the correctional facility"), where Plaintiff was then incarcerated, it was reported that Plaintiff had asthma, lactose intolerance, and IBS. AR at 367. While on parole, Plaintiff failed drug screens and was admitted into a treatment program for chemical dependency, *i.e.*, cannabis abuse, at Unity Health System ("Unity Health") from January 15, 2016 through May 9, 2016, when Plaintiff was discharged for failing to participate. AR at 311-54. On May 10, 2017, having completed his period of incarceration, Plaintiff established primary care with Sonia Dar, M.D. ("Dr. Dar"), at Rochester Regional Health ("Rochester Regional"). AR at 292-97. At an annual exam on June 7, 2017, Dr. Dar reported she was unable to obtain Plaintiff's prison medical records, but that a CT scan of Plaintiff's abdomen and pelvis from the previous month was consistent with Crohn's disease, noting Plaintiff was in the emergency department the previous month for complaints of abdominal pain which was likely a "Crohn's flare." AR at 297-303. On August 17, 2017, Plaintiff was examined by gastroenterologist Joel E. McFarland, M.D. ("Dr. McFarland"), for complaints of diarrhea, weight loss, and mucus in his stool, and labwork showed Plaintiff is anemic. AR at 256-61, 306-10. A colonoscopy on October 26, 2017 did not show IBS but was normal. AR at 262-63.

On several occasions, Plaintiff presented to the emergency room with complaints of abdominal pain and vomiting including on March 25, 2018 (AR at 627-34), March 27, 2018 (AR at 222-27), March 13, 2019 (AR at 547-52), August 22, 2019 (AR at 508-13), November 16, 2019 (AR at 449-58), and November 27, 2019 (AR at 635-39). At the August 22, 2019 emergency room visit for complaints of abdominal pain, diarrhea, and vomiting, Plaintiff was examined by Antonio Katsetos, D.O. ("Dr. Katsetos"), who gave a

differential diagnosis of cannabinoid hyperemesis syndrome (condition occurring in some regular marijuana users in which recurrent, severe vomiting, nausea, and abdominal pain are experienced), exacerbated Crohn's disease and exacerbated IBS, reporting that based on Plaintiff's symptoms and daily use of marihuana, cannabinoid hyperemesis syndrome was the most likely cause. AR at 512. On July 5, 2018, Plaintiff, upon referral from Department of Human Services, underwent at Evelyn Brandon Behavioral Health Center ("EBBHC"), a Comprehensive Psychosocial Evaluation for his cannabis use disorder and admitted smoking marijuana daily and attributed his use of marijuana to an attempt to control symptoms of Crohn's. AR at 721-34.

In connection with his disability benefits application, on April 10, 2018, Plaintiff underwent an Internal Medicine Examination by consultative physician Harbinder Toor, M.D. ("Dr. Toor"), who diagnosed Crohn's disease, IBS, and pain in the back and abdomen, all by history, AR at 245-28, and a Psychiatric Evaluation by consultative psychologist Adam Brownfield, Ph.D. ("Dr. Brownfield"), who diagnosed cannabis use disorder, noting Plaintiff reported diagnoses of Crohn's disease and IBS. AR at 250-253.

## DISCUSSION

1.   **Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

## 2. Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether,

given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 8, 2018, the application date, AR at 17, and suffers from the severe impairments of Crohn's disease, IBS, depression, and cannabis use disorder, AR at 17, but that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 17-18.  Despite his impairments, the ALJ found Plaintiff retains the RFC for sedentary work as defined by 20 C.F.R. § 416.967(a), but requires work that allows Plaintiff to alternate between sitting and standing at will while remaining on task, can frequently reach, occasionally stoop and crouch, never kneel or crawl, occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds, cannot perform work at unprotected heights, must avoid use of heavy machinery and work vehicles, and is further limited to unskilled, low stress occupations defined as those with simple routine tasks, basic work related decisions, and rare changes in the workplace setting.  AR at 18-21.  Although Plaintiff has no PRW, given Plaintiff's RFC, age, limited education but ability to communicate in English, with transferability of skills irrelevant in light of the lack of any PRW, the ALJ found Plaintiff can perform jobs that

exist in significant numbers in the national economy including (1) order clerk, food and beverage, (2) document preparer, microfilming; and (3) final assembler.  *Id*. at 21-23.  Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act.  *Id*. at 23.

In support of his motion, Plaintiff argues the ALJ erred in failing to develop the record and evaluate Plaintiff's cognitive impairments, Plaintiff's Memorandum at 9-14, and further erred in failing to consider the limitations posed by Plaintiff's IBS.  *Id*. at 14-18.  Defendant argues that substantial evidence supports both the ALJ's mental RFC finding limiting Plaintiff to simple, low-stress work, Defendant's Memorandum at 7-13, and the ALJ's physical RFC finding that Plaintiff is capable of a limited range of sedentary work.  *Id*. at 13-21.  In reply, Plaintiff advises he relies on the original arguments and authorities set forth in Plaintiff's Memorandum.  Plaintiff's Reply at 1.  Consideration of the arguments asserted by the parties and a fair reading of the administrative record establishes the matter must be remanded for further development of the record.

In particular, the ALJ erred in failing to consider Plaintiff's cognitive abilities when presented with both documentary and testimonial evidence suggesting Plaintiff had a significant cognitive impairment.  *See Jackson v. Berryhill*, 694 Fed.Appx. 39, at 40-42 (2d Cir. 2017) (vacating district court's judgment affirming the Commissioner's denial of the plaintiff's disability benefits application with instructions that the matter be remanded to the Commissioner for further proceedings including developing the record to determine the present severity of the plaintiff's cognitive impairment).  The 2006 cognitive evaluation not only establishes Plaintiff was assessed as learning disabled as

a preschooler, but that Plaintiff, despite special education services, had to repeat first grade and by 7th grade was consistently performing at two to five grade levels behind. AR at 176-79, 666. IQ testing when Plaintiff was 15 years and 10 months showed full scale IQ of 70 (WISC-III),[5] placing Plaintiff in the 2nd percentile, and full scale IQ of 72 with verbal IQ of 70 (WISC-IV). *Id*. at 668. Not only are the IQ testing results in the administrative record, AR at 668-69, but also records from Gates Chili High School, which Plaintiff attended from 2005 to 2006, showing Plaintiff had been classified as a preschooler with a learning disability and placed in a self-contained, special education program throughout his schooling until leaving school in the 9th grade, and consistently performed several grade levels behind. AR at 656-692. Significantly, at the commencement of the administrative hearing, Plaintiff's attorney specifically advised the ALJ of the school records, AR at 32-34, which were received and made part of the administrative record before the ALJ issued his decision, and Plaintiff's attorney also formally requested an intelligence consultative examination. AR at 208.

Defendant, relying on the SSA's guidelines set forth in the SSA Program Operations Manual System ("POMS")[6] Disability ("POMS DI") 24583.055, maintains these IQ scores are stale and thus no longer valid. Defendant's Memorandum at 7-8. Although Defendant correctly references POMS DI 24583.055 as providing that an IQ score of 40 or greater obtained between age 7 to age 16 is current for only two years, SSA POMS DI 24583.055.D.7, Defendant fails to add the accompanying note

---

[5] "WISC" refers to "Wechsler Intelligence Scale for Children and "III" refers to Third Addition produced in 1991, while "IV" refers to Fourth Addition produced in 2003.
[6] "The POMS is a set of guidelines through which the Social Security Administration 'further construe[s]' the statutes governing its operations." *Lopez v. Dep't Soc. Servs.*, 696 F.3d 180, 186 (2d Cir. 2012) (quoting *Clark v. Astrue*, 602 F.3d 140, 144 (2d Cir. 2010). According to the Second Circuit. "POMS guidelines are entitled to 'substantial deference, and will not be disturbed as long as they are reasonable and consistent with the statute.'" *Id*. (quoting *Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1988).

instructing that "IQ scores that are not current may still provide useful information about whether a person's intellectual disorder began during the developmental period." SSA POMS DI 24583.055.D.7, Note.  In contrast, Defendant's argument on this issue suggests that Plaintiff's IQ test results obtained when Plaintiff was two months shy of his 16th birthday are completely irrelevant to the disability determination.

Listing Impairment 12.05B sets forth the criteria for disability based on intellectual disorder, including, as relevant,

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>     a.  A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>     b.  A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) or 70 or below on an individually administered standardized test of general intelligence; and
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>     a. Understand, remember, or apply information (see 12.00E1); or
>     b. Interact with others (see 12.00E2); or
>     c. Concentrate, persist, or maintain pace (see 12.00E3); or
>     d. Adapt or manage oneself (see 12.00E4); and
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05B.

Here, current IQ testing would provide objective evidence in the record regarding whether Plaintiff meets the criteria of § 12.05B.1 and .3, but because the ALJ did not consider Plaintiff's IQ testing results, the ALJ also did not consider whether Plaintiff meets the criteria for disability under the Listing Impairment for an intellectual disorder. Further, although in connection with assessing Plaintiff's depressive disorder pursuant to 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04 the ALJ considered whether Plaintiff met the so-called "paragraph B" criteria, which are the same as the criteria under Listing

12

Impairment 12.05B.2, these criteria were assessed only with regard to Plaintiff's depression and did not include consideration of the impact of Plaintiff's subaverage IQ upon Plaintiff's capacity to function mentally.

Further, any limitations posed by Plaintiff's learning disability and sub-average intelligence were likely compounded by Plaintiff's mental health issues and drug abuse. *See Jackson*, 694 Fed.Appx. at 41 (acknowledging the claimant's limitations posed by her learning disability and low IQ "were compounded as [the claimant] grew older, by mental health issues and drug abuse."). Here, the ALJ, upon being presented with historical evidence of Plaintiff's cognitive impairments throughout Plaintiff's formal schooling and indications that such impairments persisted and may have worsened, the ALJ should have further developed the record to determine the severity of such impairments, including obtaining an intelligence consultative examination with updated IQ testing. *See Jackson*, 694 Fed.Appx. at 41 (remanding for further development of the record including updated IQ testing). Plaintiff's Motion is GRANTED with regard to the ALJ's failure to address Plaintiff's intellectual impairment.

As for Plaintiff's argument that the ALJ failed to address Plaintiff's need for bathroom breaks in light of Plaintiff's Crohn's disease and IBS, Plaintiff's Memorandum at 14-18, Defendant maintains that other than Plaintiff's own reports, the record is devoid of any evidence that Plaintiff required frequent bathroom breaks and that Plaintiff reported to his gastroenterology practitioners having only three to four watery stools per day. Defendant's Memorandum at 15-17. Defendant's argument is without merit.

The ALJ's Decision focuses on Plaintiff's mental health impairment, with little mention of Plaintiff's physical impairments and with no discussion of Plaintiff's need for

frequent bathroom breaks other than mentioning Dr. Toor's statement "that abdominal pain and diarrhea may interfere with his routine." AR at 21. In contrast, not only does the administrative record establish Plaintiff repeatedly sought medical care at hospital emergency departments for complaints of abdominal pain, nausea, vomiting, and diarrhea, *see, e.g.*, AR at 627-34 (March 25, 2018), 222-27 (March 27, 2018), 547-52 (March 13, 2019), 508-13 (August 22, 2019), 449-58 (November 16, 2019), and 635-39 (November 27, 2019), but Plaintiff's Crohn's disease and IBS were repeatedly diagnosed by Dr. Dar, AR at 297-303, and by Plaintiff's treating gastroenterologist Dr. McFarland. AR at 256-61, 306-10. Significantly, upon consultative examination, Dr. Toor reported Plaintiff's symptoms caused by Crohn's disease, including abdominal pain and diarrhea, could interfere with Plaintiff's routine. AR at 247. Under these circumstances, the ALJ was required to make specific findings regarding the frequency and anticipated length of bathroom breaks Plaintiff would require to tend to his toileting needs. *See Lowe v. Colvin*, 2016 WL 624922, at *6 (W.D.N.Y. Feb. 17, 2016) ("[T]he ALJ failed to make specific findings regarding the frequency and length of anticipated bathroom breaks, *e.g.*, whether Plaintiff's specific needs for frequency of bathroom use are compatible with ordinary, acceptable breaks (typically defined to mean one 15 minute break in the morning, one 15 minute break in the afternoon, and one 30 minute lunch break) or would be too frequent to be acceptable; and whether the length of bathroom breaks anticipated to be needed by Plaintiff are within customarily permitted time [*sic*] break times, or would cause her to be off-task or away from her workstation too often.").

14

Accordingly, upon remand, the ALJ shall also consider Plaintiff's need for bathroom breaks and the impact of such breaks on Plaintiff's ability to engage in SGA.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 7) is GRANTED; Defendant's Motion (Dkt. 8) is DENIED; the matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.  The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:  January 26th, 2023
        Buffalo, New York